# COURT OF APPEALS NO. 24-13333-F

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

NORTHFIELD INSURANCE COMPANY,

**Appellant,**

    **v.**

NORTHBROOK INDUSTRIES, INC., and J.G.,

**Appellees.**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## CIVIL ACTION FILE NUMBER 1:23-cv-03596-SEG

---

## BRIEF OF APPELLANT NORTHFIELD INSURANCE COMPANY

**Philip W. Savrin**
**Rachael Slimmon**
**FREEMAN MATHIS & GARY, LLP**
**100 Galleria Parkway, Ste. 1600**
**Atlanta, GA 30339-5948**
**(770) 818-0000**
*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1, Northfield Insurance Company, Appellant in the above-referenced matter, hereby certifies that the following persons or entities have an interest in the outcome of this appeal:

1.  Barnes & Thornburg LLP – counsel for Appellee Northbrook Industries, Inc.;

2.  Bouchard, David – counsel for Appellee J.G.;

3.  Daenecke, Alexis – counsel for Appellee Northbrook Industries, Inc.;

4.  Daniels, Christopher – counsel for Appellee Northbrook Industries, Inc.;

5.  Finch McCranie LLP – counsel for Appellee J.G.;

6.  Freeman Mathis & Gary, LLP – counsel for Appellant;

7.  Hendricks, Richard – counsel for Appellee J.G.;

8.  Hon. Geraghty, Sarah – district court judge;

9.  J.G. – Appellee;

10. Moye, John – counsel for Appellee Northbrook Industries, Inc.;

11. Northbrook Industries, Inc. – Appellee;

12. Northfield Insurance Company – Appellant;

13. Northland Insurance Company – parent company of Northfield Insurance Company;

14.     Savrin, Philip – counsel for Appellant;

15.     Slimmon, Rachael – counsel for Appellant;

16.     The Travelers Companies, Inc. (TRV) – parent company of Travelers Property Casualty Corp.;

17.     The Travelers Indemnity Company – parent company of Northland Insurance Company;

18.     Travelers Insurance Group Holdings Inc. – parent company of The Travelers Indemnity Company; and

19.     Travelers Property Casualty Corp. – parent company of Travelers Insurance Group Holdings Inc.

No publicly traded company or corporation other than The Travelers Companies, Inc. has an interest in the outcome of this case.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Northfield Insurance Company believes oral argument would be helpful to address the district court's use of the motion to dismiss standard to affirmatively find coverage under the specific terms of the policy that are at issue in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..............................................i

TABLE OF AUTHORITIES ..................................................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....1

STATEMENT OF THE ISSUES.............................................................................1

      A. Whether the district court overstepped the bounds of a motion to dismiss by finding affirmatively that Northfield Insurance Company has a duty to defend Northbrook Industries, Inc. in an underlying lawsuit? ...............................................................................1

      B. Whether, in the context of deciding a motion to dismiss on a duty to defend, the district court erred in affirmatively declaring that a sub-limit for assault and battery would not apply to Northfield's duty to indemnify?................................................................................1

STATEMENT OF THE CASE.................................................................................2

    I.     STATEMENT OF FACTS ......................................................................2

    II.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW ............................5

    III.   STANDARD OF REVIEW ........................................................................7

SUMMARY OF THE ARGUMENT ......................................................................8

ARGUMENT AND CITATIONS OF AUTHORITY ..............................................9

    I.    THE DISTRICT COURT ERRED IN RULING ON THE MERITS OF A DUTY TO DEFEND IN THE CONTEXT OF A MOTION TO DISMISS ..............................9

    II.   NORTHFIELD PLAUSIBLY ALLEGED THAT J.G.'S ALLEGATIONS ARE NOT COVERED BY NORTHBROOK'S POLICY ...................................................10

        A. Coverage A Plausibly Does Not Apply .........................................11

        B. Coverage B Plausibly Does Not Apply .........................................14

            1. Any False Imprisonment Was Not "On Behalf Of" Northbrook ...........................................................................14

            2. The Abuse or Molestation Exclusion Plausibly Applies.....18

        C. The Assault or Battery Sublimit Plausibly Applies .......................19

CONCLUSION...................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................22

CERTIFICATE OF SERVICE ..............................................................23

# TABLE OF AUTHORITIES

Citations                                                         Page No.

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 7

*Auto-Owners Ins. Co. v. Parks*,
    278 Ga. App. 444, 629 S.E.2d 118 (2006) ...................................... 14

*Bell Atlatic. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 9

*Citizens Ins. Co. of Am. v. Banyan Tree Management, LLC*,
    631 F. Supp. 3d 1256 (N.D. Ga. 2022) ............................................ 17

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) ............................................................ 18

*Glob. Network Mgmt., LTD. v. Centurylink Latin Am. Sols., LLC*,
    67 F.4th 1312 (11th Cir. 2023) .......................................................... 7

*Hays v. Georgia Farm Bureau Mut. Ins. Co.*,
    314 Ga. App. 110, 722 S.E.2d 923 (2012) ...................................... 12

*James River Ins. Co. v. Ultratec Special Effects Inc*,
    22 F.4th 1246 (11th Cir. 2022) ............................................................ 1

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014) ........................................................................................ 8

*Julmist v. Prime Ins. Co.*,
    92 F.4th 1008 (11th Cir. 2024) .......................................................... 8

*K. H. v. Riti, Inc.*,
    2024 WL 505063 (11th Cir. Feb. 9, 2024) .................................... 18

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen*,
    999 F.2d 1532, 1535 (11th Cir. 1993) ............................................ 1

*Nationwide Mut. Fire Ins. Co. v. Somers*,
    264 Ga. App. 421, 591 S.E.2d 430 (2003) ...................................... 11

*Nationwide Prop. & Cas. Ins. Co. v. Sewell Vault & Monument, Inc.*,
    No. 3:11-CV-92-TCB, 2012 WL 13028694 (N.D. Ga. Feb. 13, 2012) .............16

*Presidential Hotel v. Canal Ins. Co.*,
    188 Ga. App. 609, 373 S.E.2d 671 (1988) ........................................................11

*Reed v. Auto-Owners Ins. Co.*,
    284 Ga. 286, 667 S.E.2d 90 (2008) ..................................................................11

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974).............................................................................................9

*Small v. Georgia*,
    446 F. Supp. 3d 1352 (S.D. Ga. 2020) .............................................................10

*Travelers Prop. Cas. Co. of Am. v. Moore*,
    763 F.3d 1265 (11th Cir. 2014) ........................................................................10

*Young v. Grand Canyon Univ., Inc.*,
    57 F.4th 861 (11th Cir. 2023) .............................................................................7

Statutes

28 U.S.C. § 1292.........................................................................................................1

28 U.S.C. § 1332.........................................................................................................1

Rules

11th Cir. R. 26.1......................................................................................................C-1

11th Cir. R. 32-4 .......................................................................................................22

Fed. R. App. P. 4 .........................................................................................................1

Fed. R. App. P. 26.1 ................................................................................................C-1

Fed. R. App. P. 32 .....................................................................................................22

Fed. R. Civ. P. 12 ...................................................................................................5, 9

## Other Sources

The American Heritage Dictionary...........................................................................15

Black's Law Dictionary ........................................................................................16

Collins Dictionary ...............................................................................................16

GrammarBook.com................................................................................................16

Merriam-Webster Online Dictionary......................................................................15

Oxford Advanced Learner's Dictionary ................................................................16

Oxford-English Dictionary ...................................................................................16

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) based on diversity of citizenship between the parties and the amount in controversy exceeding $75,000.

This Court has jurisdiction to review the district court's affirmative finding on a motion to dismiss that Northfield Insurance Company has an ongoing duty to defend Northbrook Industries, Inc. in the underlying liability action. The district court's affirmative finding of a duty to defend is immediately appealable as the grant of an injunction under 28 U.S.C. § 1292(a)(1). *James River Ins. Co. v. Ultratec Special Effects Inc*, 22 F.4th 1246, 1252 (11th Cir. 2022); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen*, 999 F.2d 1532, 1535 (11th Cir. 1993).

A timely notice of appeal was filed on October 15, 2024, within 30 days of the entry of the ruling on September 16, 2024 that is the subject of this appeal. FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

A. Whether the district court overstepped the bounds of a motion to dismiss by finding affirmatively that Northfield Insurance Company has a duty to defend Northbrook Industries, Inc. in an underlying lawsuit?

B. Whether, in the context of deciding a motion to dismiss on a duty to defend, the district court erred in affirmatively declaring that a sub-limit for assault

and battery would not apply to Northfield's duty to indemnify?

## STATEMENT OF THE CASE

### I.    STATEMENT OF FACTS

Northfield Insurance Company ("Northfield") sought a declaration that it does

not owe coverage under an insurance policy issued to Northbrook Industries, Inc.

("Northbrook"), including a defense, for claims asserted in the underlying lawsuit

styled *J.G. v. Northbrook Industries, Inc. d/b/a United Inn and Suites*, Case number

1:20-cv-05233-SEG, that is also pending in the Northern District of Georgia ("the

Underlying Lawsuit"). In that lawsuit, J.G. alleges she was trafficked for sex as a

minor by individuals who "operated openly and brazenly" at the United Inn & Suites

in Decatur, Georgia. (Doc. 1-1, pp. 2, 5, 9.) She claims Northbrook breached its

obligations as the owner and operator of the hotel.  (*Id.*, pp. 5-7.) She sought damages

under the Trafficking Victims Protection Reauthorization Act ("TVPRA") as well

as state law. (*Id.*, pp. 33-36, ¶¶ 86-111.)

In pertinent part, the Commercial General Liability Coverage Form of policy

number WS348486 ("the policy") applies to claims of "bodily injury" under

Coverage A and "personal and advertising injury" under Coverage B. (Doc. 1-2, p.

pp. 33 *et seq*.) The term "bodily injury" is defined as "bodily injury, sickness or

disease sustained by a person, including death resulting from any of these at any

time." (Doc. 1-2, p. 44.) To be covered, the "bodily injury" must occur during the

policy period and be caused by an "occurrence" that is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-2, p. 46.)

Coverage B applies to "personal and advertising injury" that is "caused by an offense arising out of [Northbrook's] business" committed during the policy period. (Doc. 1-2, p. 37.) By endorsement entitled "Combination Endorsement Personal and Advertising Injury Liability," the term "personal and advertising injury" is defined in pertinent part as "injury caused by one or more of the following offenses committed by or on behalf of the insured: (1) False arrest, detention or imprisonment, provided that the claim is made or the 'suit' is brought by a person who claims to have been falsely arrested, detained or imprisoned." (Doc. 1-3, p. 2.)

An endorsement entitled "Exclusion – Abuse or Molestation" applies to both Coverages A and B and excludes coverage for claims "arising out of any act of 'abuse or molestation' committed by any person, including any act or omission in connection with the prevention or suppression of such 'abuse or molestation'." (Doc. 1-2, p. 53.) "Abuse or molestation" is defined within the endorsement as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (*Id*., p. 53.)

A separate endorsement entitled "Limited Assault or Battery Liability

Coverage" ("Assault or Battery Endorsement") applies to both Coverages A and B and excludes coverage for claims "arising out of any act of 'assault' or 'battery' committed by any person, including any act or omission in connection with the prevention or suppression of such 'assault' or 'battery'." (Doc. 1-3, p. 5.) The endorsement then grants a sub-limited Assault or Battery Liability coverage subject to a $25,000 limit for "Each Assault or Battery Offense" and a $50,000 aggregate limit. (*Id.*) This sub-limited coverage applies in pertinent part to "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury'" that is "caused by an 'assault or battery offense' arising out of [Northbrook's] business but only if the 'assault or battery offense' was committed … during the policy period." (*Id.*, p. 6.)

An "assault or battery offense" is defined within the endorsement as "a single act of 'assault' or 'battery', or multiple, continuous, sporadic or related acts of 'assault' or 'battery', committed by any person or by two or more persons acting together." (Doc. 1-3, p. 8.) "Assault" is defined within the Endorsement as "any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury." (*Id.*) "Battery" is defined as "any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (*Id.*)

The Assault or Battery Liability coverage is subject to the Directed Or Knowingly Allowed Acts exclusion, which bars coverage for claims of injury "committed at the direction of the insured of that the insured knowingly allowed to happen." (Doc. 1-3, p. 6.) The Assault or Battery Liability coverage is also subject to the Abuse Or Molestation Or Sexual Harassment exclusion, which bars coverage, in relevant part, for claims "arising out of 'abuse or molestation'." (*Id*., p. 6.) The Assault or Battery Endorsement defines "abuse or molestation" as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (*Id*., p. 8.)

## II.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Northbrook moved to dismiss the complaint claiming Northfield had not stated a claim under Federal Rule of Civil Procedure 12(b)(6), which J.G. adopted. (Docs. 7, 7-1, 9, and 22.) Northfield responded that any "bodily injury" alleged by J.G. would have arisen from "abuse or molestation" as defined by the policy and was therefore excluded from coverage. With respect to "personal or advertising injury," Northfield contended that any "false imprisonment" was by J.G.'s traffickers as opposed to "on behalf of" Northbrook as required by Coverage B. In support, Northfield showed that "on behalf of" requires an agency relationship with the traffickers which J.G. does not allege. Alternatively, Northfield contended that J.G.'s

claims arise from an "assault" or "battery" as defined by the policy and thus subject to the Assault or Battery sublimit.

The Court granted the motion in part, finding affirmatively that Northfield owed a defense but staying the Coverage Lawsuit with respect to a duty to indemnify. (Doc. 28.) In so deciding, the Court recognized that "bodily injury" under Georgia law requires there to be a *physical* injury to the body. (*Id*., p. 14.) The Court then found that J.G.'s allegations that she sustained "physical deterioration" and "injuries" were sufficient to fall with the grant of coverage for "bodily injury" apart from physical contact from sex trafficking. (*Id*.) The Court further found that J.G.'s claim fell within the "offense" of false imprisonment committed "on behalf of" Northbrook based on the allegation that Northbrook benefitted from the sex trafficking without the need for an agency relationship with the traffickers. (*Id.*, pp. 17-19.)

Then, in examining the "abuse or molestation" exclusion in Northbrook's policy, the Court stated that "the question is whether, in the absence of abuse or molestation, there would be no claim against Northbrook at all." (Doc. 28, p. 21.) Although the Court acknowledged that being forced to engage in commercial sex acts constitutes "abuse or molestation" that would be excluded from coverage, the Court found it arguable that J.G. sustained injuries "from other aspects of J.G.'s experience as an underage victim of trafficking." (*Id*., pp. 22-23.) The Court

similarly concluded that J.G.'s claimed injuries from false imprisonment under Coverage B were not all traceable to "abuse or molestation" to be excluded under the "personal and advertising injury" provisions in Northbrook's policy.

Lastly, the Court examined the Assault or Battery Endorsement that defines "assault" as "any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury;" and "battery" as "any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (Doc. 28, pp. 26-27.) The Court found that J.G. did not allege claims within the Assault or Battery Endorsement because "the underlying complaint does not allege that physical force was used or threatened against her." (*Id.*, p. 28.) Thus, the Court found that the allegations went beyond the sublimit for "assault or battery" claims. (*Id.*, pp. 28-29.)

## III.   STANDARD OF REVIEW

This Court exercises "plenary review of the dismissal of a complaint for failure to state a claim." *Young v. Grand Canyon Univ., Inc*., 57 F.4th 861, 867 (11th Cir. 2023). The determination to be made is whether the complaint has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The question, therefore, "is whether a claim is 'substantively plausible.'" *Glob. Network Mgmt., LTD. v. Centurylink Latin Am. Sols., LLC*, 67 F.4th 1312,

1315 (11th Cir. 2023) (*quoting Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014)). Further, "[b]ecause insurance policies are considered contracts, interpretation of insurance policy language is also a matter of law, subject to *de novo* review." *Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1016 (11th Cir. 2024) (reviewing the dismissal of a coverage claim *de novo*).

## SUMMARY OF THE ARGUMENT

There are two questions in this appeal: first, whether a district court can affirmatively find that an insurer owes a duty to defend when ruling solely on a motion to dismiss; and second, whether Northfield has plausibly alleged that the policy does not cover the Underlying Lawsuit. Indeed, the district court went even further and declared that a sub-limit for assault and battery claims would not apply to a duty to indemnify.

The first issue presents a clear procedural error. Motions to dismiss are reviewed under a "plausibility" standard to determine whether a plaintiff has alleged sufficient facts to allow the case to proceed. Courts may not rule on the merits or grant relief on motions to dismiss, other than granting dismissal. Yet in ruling on a motion to dismiss, the district court ruled affirmatively that Northfield has a duty to defend and dismissed that portion of the complaint accordingly. (Doc. 28.) In so doing, the district court improperly entered a judgment on the merits without requiring responses to the allegations in Northfield's complaint. The decision

finding an affirmative duty to defend should be vacated accordingly.

Instead, the proper question to have been answered is whether Northfield's Complaint presents a "plausible" claim for relief. Based on the allegations and the terms of the policy, it is plausible (at the very least) that J.G.'s are not covered by the policy. The motion to dismiss should have been denied.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. THE DISTRICT COURT ERRED IN RULING ON THE MERITS OF A DUTY TO DEFEND IN THE CONTEXT OF A MOTION TO DISMISS

Although the district court recited the "plausibility" standard that applies to Rule 12(b)(6) motions in passing (*see* Doc. 28, pp. 8-9), the court did not apply that standard in its ruling. Instead, without even requiring responses to Northfield's allegations, the district court determined for itself that Northfield has a duty to defend the Underlying Lawsuit.

Federal law is clear that the issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is *not* whether the claim will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id*. A motion to dismiss should be denied "even if actual proof of those facts [pleaded in the complaint] is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations and internal quotation marks omitted). So, the

court "must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff." *Small v. Georgia*, 446 F. Supp. 3d 1352, 1355 (S.D. Ga. 2020).

It is important to reiterate that the district court ruled on a motion to dismiss. It was not a motion for judgment on the pleadings or a motion for summary judgment in which the district court could make a final ruling on Northfield's claims. Neither of the defendants has filed a counterclaim seeking a declaration, nor did either defendant even file an answer. In other words, no party has filed a claim asserting that the Underlying Lawsuit is covered. Northbrook simply asked the district court to dismiss the lawsuit. Northbrook did not request that the district court find a duty to defend, nor would it have been proper to ask for such relief at the motion to dismiss stage. As the district court dismissed Northfield's claims as to the duty to defend, it was error to rule on the merits that Northfield has a duty to defend. The ruling should be vacated accordingly.

## II. NORTHFIELD PLAUSIBLY ALLEGED THAT J.G.'S ALLEGATIONS ARE NOT COVERED BY NORTHBROOK'S POLICY

The Northfield policy was issued in Georgia and is therefore construed according to Georgia law. *See Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1271-82 (11th Cir. 2014). "Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier

or the insured." *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287, 667 S.E.2d 90, 92 (2008).

Because Northfield plausibly alleged that J.G.'s allegations are not covered, the motion to dismiss should have been denied.

### A. Coverage A Plausibly Does Not Apply

In the complaint, Northfield alleged that "any claims for 'bodily injury' under Coverage A … would be excluded from coverage." (Doc. 1, ¶¶ 34-37.) Coverage A applies to "bodily injury," which is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 1-2, p. 44.) This definition "pertains to physical injury to the body. It does not include non-physical, emotional or mental harm." *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 427, 591 S.E.2d 430, 435 (2003) (quoting *Presidential Hotel v. Canal Ins. Co.*, 188 Ga. App. 609, 611, 373 S.E.2d 671, 672 (1988)).

Even if J.G. alleges "bodily injury" in the Underlying Lawsuit, the endorsement entitled "Exclusion – Abuse or Molestation" excludes coverage for claims "arising out of any act of 'abuse or molestation' committed by any person, including any act or omission in connection with the prevention or suppression of such 'abuse or molestation'." (Doc. 1-2, p. 53.) "Abuse or molestation" is defined for the purpose of the endorsement as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some

injury, regardless of whether the resulting injury inflicted is intended or expected."

(Doc. 1-2, p. 53.)

The construction of the phrase "arising out of" in the endorsement is critical

for its application under Georgia law:

> When the phrase "arising out of" is found in an exclusionary clause of
> an insurance policy, we apply the "but for" test traditionally used to
> determine cause-in-fact for tort liability. *Barrett v. Nat. Union Fire Ins.*
> *Co., etc.*, 304 Ga. App. 314, 321, 696 S.E.2d 326 (2010).
> Notwithstanding tort liability theories, the underlying facts and
> circumstances of the claims asserted determine whether or not a policy
> exclusion applies, because
>
>> [t]he exclusionary clause is focused solely upon the genesis of
>> the underlying plaintiff's claims—if those claims arose out of
>> the excluded acts ... then coverage need not be provided. Claims
>> arise out of [t]he excluded conduct when "but for" that conduct,
>> there could be no claim against the insured.
>
> (Citations, footnote, and punctuation omitted.) *Video Warehouse v.*
> *Southern Trust Ins. Co.*, 297 Ga. App. 788, 791, 678 S.E.2d 484 (2009).

*Hays v. Georgia Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 114, 722 S.E.2d

923, 927 (2012).

Therefore, the question to be asked is not whether there is any possibility that

J.G. sustained a physical injury outside of being abused or molested, but instead

whether her claims have their "genesis" in the "abuse or molestation" conduct as

that term is defined in the policy. Stated otherwise, "but for" J.G. being the victim

of sex trafficking—which the district court acknowledged was "abuse or

molestation"—has she alleged any "bodily injury" at all? The answer to that

question is quite plainly "no."

In concluding that J.G.'s allegations included "bodily injury," the district court cited Paragraphs 23 and 52 of the Underlying Lawsuit to find that J.G. had alleged "physical deterioration" and "injuries." (Doc. 28, p. 14.) Paragraph 23, however, is explicit that the "physical deterioration" occurred "[w]hile she was trafficked for sex at the United Inn." (Doc. 1-3, ¶ 23.) Likewise, in Paragraph 52, J.G. alleged that she sustained physical harm "[a]s a direct and proximate result of Northbrook's acts and omissions, and Plaintiff being trafficked for sex as a minor at the United Inn." (*Id*., ¶ 52.) Northbrook's "acts and omissions," in turn, were alleged to have "facilitated Plaintiff's minor sex trafficking at the United Inn." (*Id*., ¶ 51.)

The *entirety* of J.G.'s allegation is that her harm flowed from her being trafficked for sex; indeed, the first sentence of the Underlying Lawsuit reads: "This case involves the sex trafficking of a child." (Doc. 1-1, ¶ 1.) Sex trafficking is then mentioned or referenced throughout the Underlying Lawsuit as the basis for the claims being asserted. (*Id*., ¶¶ 1-3, 8, 10-11, 14-27, 29-30, 32-48, 51-83, 86-95, 97-104, 107, 110, 113.) Without sex trafficking—which plainly falls within the "abuse or molestation" exclusion—J.G. would have no claims to assert against Northbrook. Quite plainly, "abuse or molestation" is the "genesis" of all her claims. Even the district court agreed that J.G.'s alleged "bodily injury" arises from "J.G.'s experience as an underage victim of trafficking." (Doc. 28, pp. 22-23.) The

possibility that J.G.'s "bodily injury" may have been caused by "other aspects of trafficking" does not mean it is implausible that the "bodily injury" arose out of "abuse or molestation." Instead, the direct opposite is true.

In sum, J.G. would not have suffered any of the injuries alleged in the absent the sex trafficking. Thus, the district court's conclusion that Northfield had not stated a claim for the absence of coverage for the "bodily injury," let alone a plausible ground for relief, should be reversed.

## B. Coverage B Plausibly Does Not Apply

The policy requires that any "false arrest, detention or imprisonment" must have been committed "by or on behalf of" Northbrook for Coverage B to apply. (Doc. 1-3, p. 2.) Contrary to law, the district court considered J.G.'s detention to have been "on behalf of" Northbrook and, as with "bodily injury," found the "abuse or molestation" exclusion did not apply. Both findings should be reversed.

### 1. Any False Imprisonment Was Not "On Behalf Of" Northbrook

Because the policy itself does not define "on behalf of," its usual and common meaning as defined by dictionaries indicate its meaning—as the district court acknowledged. (Doc. 28, p. 17) (citing *Auto-Owners Ins. Co. v. Parks*, 278 Ga. App. 444, 446, 629 S.E.2d 118, 121 (2006)). The dictionary definitions then cited by the district court, however, do not support the conclusion that "on behalf of" means "act[ing] in the interest of another." (Doc. 28, p. 18.)

The district court first cites to Merriam-Webster's definition of "behalf" as alternatively meaning "in the interest of" or "as a representative of." (Doc. 28, p. 17, citing https://www.merriam-webster.com/dictionary/behalf (last visited January 9, 2025). The same dictionary, however, has *separate* definitions for "*on* behalf of someone" which means "as a representative of someone," as opposed to "*in* behalf of someone" which means "for the benefit of someone" or "in support of someone." https://www.merriam-webster.com/dictionary/on%20behalf%20of%20someone (last visited January 9, 2025) (emphases added). Here, J.G. was not falsely imprisoned by a "representative" of Northbrook, and therefore the detention was not "on" Northbrook's behalf.

This critical distinction between "on behalf of" and "in behalf of" is evident in the other definitions cited by the district court, as well. (*See* Doc. 28, pp. 17-18.) The American Heritage Dictionary defines "on/in behalf of" as: "[a]s the agent of; on the part of" and "[f]or the benefit of; in the interest of." https://ahdictionary.com/word/search.html?q=on+behalf+of (last visited January 9, 2025). The same dictionary entry explains that "*in* behalf of means 'for the benefit of,' ... while its counterpart *on* behalf of means 'as the agent of, on the part of...'" *Id*. (emphasis added). The district court also cited to Black's Law Dictionary, which states: "The phrase ***in behalf of*** traditionally means 'in the interest, support, or defense of'; ***on behalf of*** means 'in the name of, on the part of, as the agent or

- 15 -

representative of.'" BEHALF, Black's Law Dictionary (12th ed. 2024) (emphases added). Lastly, the district court cited to the Oxford-English Dictionary, which defines "on behalf of" as "[i]n the name of a person, organization, etc."; "as the agent or representative of"; or "for". Behalf, Oxford-English Dictionary. Thus, "*in* behalf of" may mean 'in the interest of' or 'for the benefit of,' while "*on* behalf of" at least plausibly does not.[1]

Courts considering this language arrive at the same result. In *Nationwide Property & Casualty Insurance Company v. Sewell Vault & Monument, Inc.*, No. 3:11-CV-92-TCB, 2012 WL 13028694 (N.D. Ga. Feb. 13, 2012), for example, a contractor who was sued for disturbing a grave sought coverage for a "personal and

---

[1] Other dictionaries differentiate similarly between the terms:

> in behalf of somebody | in somebody's behalf
> *(US English)* in order to help somebody

> on behalf of somebody | on somebody's behalf
> as the representative of somebody or instead of them

https://www.oxfordlearnersdictionaries.com/us/definition/english/behalf (last visited January 9, 2025). *See also* In Behalf Of vs. On Behalf Of, GrammarBook.com, https://www.grammarbook.com/blog/definitions/in-behalf-of-vs-on-behalf-of/ (last visited January 9, 2025) (explaining that "in behalf of" means "for the benefit, advantage, or interest" of another, "on behalf of" means "as the agent of," "in place of," or "on the part of"). "On behalf of" is defined by Collins Dictionary to mean "speaking for; representing." https://www.collinsdictionary.com/us/dictionary/english/on-behalf-of (last visited January 9, 2025). In sum, the common dictionary meaning of "on behalf of" is 'agent or representative of,' 'in the name of,' or 'on the part of.'

advertising injury" offense "committed by or on behalf of [the] owner, landlord or lessor." Because the contractor was not "the owner, landlord, or lessor of the cemetery, coverage d[id] not apply." *Id.* at *4. The same logic applies here: whether or not Northbrook could be liable for J.G.'s injury, the "false imprisonment" was not committed "by or on behalf of" Northbrook so as to come with in the offense. Similarly, in *Citizens Insurance Company of America. v. Banyan Tree Management, LLC*, 631 F. Supp. 3d 1256 (N.D. Ga. 2022), a hotel guest sued for being filmed in the shower by a hotel employee who posted the footage on the internet. As in *Sewell Vault*, the court found the claimed injury was not committed "by or on behalf of" the hotel because filming was not done by the hotel nor did the hotel direct the employee to film the guest. *Id.* at 1278. Likewise, J.G. does not allege that she was falsely imprisoned "by or on behalf of" Northbrook.

Even if "on behalf of" meant acting in one's interest, the district court would still have erred in finding that Northfield had not stated a "plausible" claim for relief. The basis for the district court's ruling is that J.G. alleged that her trafficking generated room revenue for Northbrook and that Northbrook otherwise facilitated the trafficking activities. (Doc. 28, pp. 16-19) (citing Doc. 1-1, ¶¶ 11, 39, 75, 76.) The district court did not cite any case law supporting the conclusion that an indirect financial benefit means that the activity was "on behalf of" the insured for the

coverage to apply.[2] At a bare minimum, therefore, Northfield plausibly alleged that J.G. does not assert a claim for false imprisonment "on behalf of" Northbrook to come within the "personal and advertising" provisions of the policy.

## 2. The Abuse or Molestation Exclusion Plausibly Applies

Even if J.G. had alleged that her false imprisonment was "on behalf of" Northbrook, Northfield at least plausibly alleged that the Abuse or Molestation exclusion applies. As with Coverage A, the district court dismissed Northfield's claim by finding that the "harms relating to J.G.'s false imprisonment fall outside the Abuse or Molestation Exclusion." (Doc. 28, p. 26) (cleaned up). As discussed above with respect to "bodily injury," however, the legal inquiry under Georgia law is whether J.G. would not have been injured "but for" her "abuse or molestation," i.e., the alleged sex trafficking she endured. So viewed, the allegations cited by the district court all arise from the allegations of sex trafficking. (*See* Doc. 28, pp. 16-17, 19.) As sex trafficking is plainly the "genesis" of all her claims, Northfield at

---

[2] Indeed, there is no allegation of an indirect financial benefit in the Underlying Action, which would be insufficient in any event to hold Northbrook liable under the substantive law. *See K. H. v. Riti, Inc.*, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726-27 (11th Cir. 2021)) ("While the franchisors managed and 'were inextricably connected to the renting of rooms,' financially benefitted from renting those rooms to traffickers, and trained the managers who served as police lookouts, we held that these allegations were insufficient to allege a common sex trafficking undertaking or enterprise.").

least plausibly alleged that the "abuse or molestation" exclusion applies so as to preclude a duty to defend under the policy.

## C. The Assault or Battery Sublimit Plausibly Applies

Even if the district court were correct that it were possible to parse out the injuries from sex trafficking as their genesis—which it is not—the district court overstepped its bounds in finding that Northbrook's coverage is not subject to the $50,000 aggregate sublimit for an "assault or battery" offense."

At the outset, Northfield notes that the district court ignored that the word "assault" as defined in the policy is not tied to fear of a *physical* act. Instead, as quoted by the district court, "assault" is defined as "any attempt or threat to inflict injury to another…" (Doc. 28, p. 27, quoting Doc. 1-3, p. 8.) In sharp contrast, "battery" is defined as "any intentional, reckless or offensive physical contact with, or any use of force against…" (*Id.*) Yet in then construing the "assault" provision, the district court wrote that "the underlying complaint does not allege that *physical* force was used or threatened against her." (*Id.*, p. 33.)

The district court's insertion of the word "physical" was error because the policy's "assault" definition was merely the threat of "injury," which J.G. has mostly certainly alleged. Further, the district court's acknowledged that J.G. alleged she was "forcibly kept in a hotel for extended periods without freedom of movement and under the thumb of dangerous individuals," and was "confined by weapon-toting

traffickers for weeks on end in hotel rooms that were used for a booming prostitution and drug-selling enterprise." (Doc. 28, pp. 22-23.) (*See* Doc. 1-1, ¶¶ 20, 21, 26, 31.) These allegations combine to fall squarely within the policy's definition of an "assault or battery offense." The district court thus erred in not only granting the motion to dismiss but by affirmatively concluding that "the Assault or Battery Endorsement does not bar or limit coverage for J.G.'s claims." (Doc. 28, p. 29.)

By stating that the endorsement does not bar *or limit* coverage, the district court was referencing the sub-limit of $25,000 per offense and $50,000 in the aggregate. (Doc. 1-3, p. 5.) This finding is particularly striking because it is internally inconsistent with the district court's (correct) finding that resolving a duty to indemnify would be premature while also recognizing that some portion of the alleged injuries *do* constitute and "assault or battery offense" as that term is defined in the endorsement. Whether all of the injuries actually fall within the endorsement (so as to be subject to the sub-limit) is far beyond the permissible reach of a ruling as to whether Northfield plausibly stated a claim that it did not owe a defense to Northbrook in the first place.

The district court further compounded its errors by failing to recognize that the Assault or Battery Liability coverage is itself subject to the Abuse Or Molestation Or Sexual Harassment exclusion, which bars coverage, in relevant part, for claims "arising out of 'abuse or molestation'." (Doc. 1-3, p. 6.) The Assault or Battery

Endorsement defines "abuse or molestation" as "any intentional, reckless or offensive physical contact of a sexual nature with a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." (Doc. 1-3, p. 8.) As discussed above, the "genesis" of the Underlying Lawsuit is sex trafficking, which constitutes "abuse or molestation." To the extent J.G.'s allegations meet the Assault or Battery Liability coverage insuring agreement for "bodily injury" or "personal and advertising injury," they would fall within this "abuse or molestation" exclusion. At a bare minimum, therefore, Northfield alleged a plausible claim that should have been allowed to proceed.

## CONCLUSION

For the reasons provided, this Court should vacate the district court's decision that Northfield owes a duty to defend and reverse the denial of the motion to dismiss.

FREEMAN MATHIS & GARY, LLP

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
Rachael Slimmon
Georgia Bar No. 831661
rslimmon@fmglaw.com
*Attorneys for Appellant*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this document contains 5,214 words. This word count was derived in reliance on the word count of the word-processing system (Microsoft Word) used to prepare this document.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally-spaced typeface using Microsoft Word in Times New Roman, 14-point font.

/s/ *Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

*Attorney for Plaintiff-Appellant*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing **BRIEF OF APPELLANT NORTHFIELD INSURANCE COMPANY** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

John Moye
BARNES & THORNBURG LLP
3340 Peachtree Road, N.E., Suite 2900
Atlanta, Georgia 30326-1092
*Counsel for Northbrook Industries, Inc. dba United Inn and Suites*

David H. Bouchard
FINCH McCRANIE, LLP
229 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30303
*Counsel for J.G.*

This 9th day of January, 2025.

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
*Attorney for Appellant*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)