PIN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATIONAL TRUST INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) FINISHING DYNAMICS, LLC and ) HILBOLDT CURTAINWALL, INC., ) ) Defendants. ) | CIVIL ACTION FILE NO. 1:18-cv-00351-WMR |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff National Trust Insurance Company's ("NTIC") Motion for Summary Judgment (Doc. 34).  NTIC seeks a declaration that it does not owe coverage to its insured, Defendant Finishing Dynamics, LLC ("FD"), for claims asserted by Defendant Hilboldt Curtainwall, Inc. ("Hilboldt") in an underlying liability lawsuit.   The motion has been fully briefed, and oral argument was held before this Court on July 16, 2019. The Court enters the following Order.

## II.     BACKGROUND

On November 1, 2017, Hilboldt sued Finishing Dynamics for claims arising from a construction project in Missouri. Hilboldt contends that it was hired to supply

1

curtainwalls, that are non-structural exterior wall systems comprised of glass panels that are joined together by aluminum extrusions. In turn, Hilboldt alleges that it provided the aluminum extrusions to FD to apply a specified coating.

Hilboldt contends that FD did not clean and/or pretreat the extrusions properly, and/or failed to properly apply the coating to the extrusions, such that they "were damaged and rendered useless for the Project" and "could not be incorporated into the curtainwall system." Based on these allegations, Hilboldt seeks damages from FD for breach of contract and implied warranty of merchantability, along with prejudgment interest and court costs. NTIC is defending FD in the Underlying Lawsuit pursuant to a reservation of rights, after which it brought this declaratory judgment action to determine the extent (if any) of its coverage obligations.

Hilboldt issued the purchase order to FD on November 3, 2015, but does not state when the alleged damage was sustained. Accordingly, the Court will consider the NTIC policies in effect from the date the purchase order was issued through September 16, 2018. These policies included Commercial General Liability Coverages, as well as umbrella policies ("the Policies"). The parties agreed that the Policies contain the same material terms with respect to the liability claim at issue.

In this case, NTIC argues that it is entitled to summary judgment on its claim for declaratory relief regarding its duty to defend. However, FD contends that the undisputed facts do not unambiguously exclude coverage under the policies.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For issues upon which the moving party bears the burden of proof at trial, the moving party must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of its claim. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993). It must support its motion with evidence that would entitle it to a directed verdict if not controverted at trial. *Id.* For issues upon which the nonmoving party bears the burden of proof at trial, the movant "is not required to support its motion with affidavits or other similar material negating [Plaintiff]'s claim in order to discharge [its] initial responsibility." *Id.* Rather, the movant carries its burden on summary judgment by noting "an absence of evidence to support [Plaintiff]'s case." *Id.* at 1116. The burden then shifts to the nonmoving party to "respond with evidence sufficient to withstand a directed verdict motion at trial." *Id.*

### B.     Duty to Defend

Whether an insurer has a duty to defend depends on the language of the insurance contract and the allegations of the complaint asserted against the insured. *City of Atlanta v. St. Paul Fire & Marine Ins. Co.,* 231 Ga. App. 206, 207, 498 S.E.2d 782 (1998). "An insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy." *Landmark Ins. Co. v. Khan* 307 Ga. App. 609, 611 (2011) citing *Pilz v. Monticello Ins. Co.,* 267 Ga.App. 370, 371, 599 S.E.2d 220 (2004). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. However, the insurer is justified in refusing to defend the insured's lawsuit if the facts alleged do not state a claim for which there would be coverage." *First Coast Energy, LLP v. Cincinnati Ins. Co.*, 227 F. Supp 3d 1282, 1286 (M.D. Fla. 2017) internal quotations and citations omitted). "An insured claiming an insurance benefit has the burden of proving that a claim falls within the coverage of the policy." *Forster v. State Farm Fire & Cas. Co.*, 307 Ga. App. 89, 91, 704 S.E.2d 204, 205 (2010) (internal quotation marks omitted), <u>overruled on other grounds</u>, *Taylor Morrison Servs. v. HDI-Gerling Am. Ins. Co.*, 293 Ga. 456, 746 S.E.2d 587 (2013).

## III. DISCUSSION

### A. Hilboldt Does Not Seek Damages For "Property Damage"

The Policies define "property damage" as "physical injury to tangible property" and "loss of use of tangible property that has not been physical injured." The Supreme Court of Georgia has construed this identical definition in the context of faulty workmanship claims as follows:

> Property or work that is inherently defective because it was produced by faulty workmanship cannot be said to have been "physically injured" by the very faulty workmanship that brought it into being in the first place. Likewise, property or work that is inherently defective cannot be said to have sustained a "[l]oss of use" to the extent that it was unusable at its creation, inasmuch as a "[l]oss of use" necessarily requires that the property or work once have been capable of being put to use.

*Taylor,* 293 Ga. at 461, n. 10, 746 S.E.2d at 591, n. 10. Similarly, breach of warranty for providing a defective product would not be covered: "it generally will only be a breach of warranty of nondefective property from which coverage might arise, as liability for breach of the warranty of defective property would not involve 'damages because of property damage to the nondefective property*." Id*., at 467, 746 S.E.2d at 595.

Pursuant to *Taylor,* the **defective** extrusions delivered by FD to Hilboldt do not constitute "property damage" (defined as either "physical injury" or "loss of use"

5

in the Policies) so as to fall within Hilboldt's claims for breach of contract or warranty. See also *Cowart v. Nautilus Ins. Co.,* 2019 U.S. Dist. LEXIS, 8531, at *19, (S.D. Ga. Jan. 17, 2019) (allegations that insured constructed "a defective and unusable pool" did not assert claims for "property damage" covered by the policy); *Allstate Ins. Co. v. Luu,* 2017 U.S. Dist. LEXIS 190983, at *4 (N.D. Ga. 2017) (finding claims arising out of alleged code violations were not covered because "the Georgia Supreme Court has made clear that 'property damage,' as that term is used in the standard CGL policy, necessarily must refer to property that is nondefective, and to damage beyond merely faulty workmanship"); *First Coast Energy, LLP v. Cincinnati Ins. Co*., 227 F. Supp.3d at 1287-1288 (construing Georgia law to hold that claims for loss of use of the defective gas tanks did not constitute property damage because of "defects which were present at delivery").

Accordingly, NTIC does not owe coverage to FD due to the absence of "property damage" claimed by Hilboldt. Even if Hilboldt's claims constituted "property damage," exclusions from coverage would apply.

### 1.      The Claims Fall Within Exclusions From Coverage

The Policies contain so-called "business risk" exclusions that "serve to exclude liabilities for the repair or correction of defective work form the scope of coverage." *Taylor,* at 293 Ga. at 462, 746 S.E.2d at 592.  These exclusions apply to

the risk "borne by the contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements." *SawHorse, Inc. v. S. Guar. Ins. Co.*, 269 Ga. App. 493, 495, 604 S.E.2d 541, 544 (2004).

### a. Damage to Property Exclusion

Under Exclusion (j)(6), coverage is excluded for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." This exclusion applies because Hilboldt alleges that FD damaged the extrusions because its work "was incorrectly performed on it." Further, the term "your work" means both "work or operations performed by you" and "materials, parts or equipment furnished in connection with such work or operations" as well as "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'." As explained in *Johnson Landscapes, Inc. v. FCCI Ins. Co.,* 2007 U.S. Dist. LEXIS 88859, *19 (N.D. Ga. 2007), this definition includes "materials, parts, and equipment furnished in connection with the [construction project] wall, even if originally provided by other parties."

Consequently, Exclusion (j)(6) applies as Hilboldt's claims are for damage caused by FD's work on the extrusions it had provided.

### b. Damage to Your Work Exclusion

The Damage to Your Work exclusion applies to "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" This exclusion mirrors Exclusion (j)(6) with the exception that it applies to damage occurring after the work has been completed. To that extent, it would apply equally to Hilboldt's claims of damage to the extrusions.

### c. Damage to Your Product Exclusion

The Damage to Your Product exclusion applies to "'property damage to 'your product' arising out of it or any part of it." The term "Your Product" is defined as "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed or by [FD]" as well as "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product." This exclusion applies because Hilboldt's claims are for damage to the extrusions that FD "handled."

### d. Exclusion For "Damage to Impaired Property Or Property Physically Injured"

Coverage is excluded as well under the Damage to Impaired Property or Property Not Physically Injured exclusion (referred to herein as "the Impaired Property exclusion") which applies in pertinent part to:

8

> "Property damage" to … property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion applies to the extent the extrusions were not physically damaged but were merely rendered unusable because they were unsightly or otherwise failed to meet the agreed contractual requirements.

### B. Duty to Indemnify

Because NTIC does not have a duty to defend FD in the underlying lawsuit, it also does not have a duty to indemnify. See, e.g., *Progressive Mt. Ins. Co. v. Madd Transp., LLC,* 633 F. App'x. 744, 746 n.4 (11th Cir. 2015); *Nat'l Cas. Co. v. Pickens*, 582 F. App'x. 839, 842 (11th Cir. 2014); *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 579, 649 S.E.2d 740 (2007).

### IV. CONCLUSION

For the reasons set forth above, the claims against FD do not constitute "property damage" as defined by the Policies and alternatively fall within the "business risk" exclusions from coverage in the Policies. Accordingly, the Court hereby **GRANTS** the Motion for Summary Judgment.

**SO ORDERED** this 26th day of August, 2019.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE