**FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13333
_____

NORTHFIELD INSURANCE COMPANY,

*Plaintiff-Appellant,*

*versus*

NORTH BROOK INDUSTRIES, INC.,

d.b.a. United Inn and Suites,
J.G.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-03596-SEG
_____

Before WILLIAM PRYOR, Chief Judge, and ABUDU and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The instant appeal concerns a declaratory judgment action and an underlying tort suit.

## I. BACKGROUND

North Brook Industries, Inc. (d/b/a United Inn & Suites) owns and operates a hotel in Decatur, Georgia. In December 2020, J.G. sued North Brook under a federal statute and Georgia common law for injuries she sustained while being sex trafficked by third parties at the hotel between 2018 and 2019.[1]

Northfield Insurance Company insures North Brook under a commercial insurance policy. Under Coverage A, Northfield must pay "those sums that [North Brook] becomes legally obligated to pay as damages" because of bodily injury and property damage to which the policy applies and must "defend [North Brook] against any 'suit' seeking those damages." Under Coverage B, Northfield must pay "those sums that [North Brook] becomes legally obligated to pay as damages" because of personal and advertising injury to which the policy applies and must "defend [North Brook] against any 'suit' seeking those damages."

Northfield's duties under Coverages A and B are modified by two endorsements relevant to this case. Under the abuse or

---

[1] Northfield provided North Brook with a defense in this action subject to a reservation of rights. On July 11, 2025, a jury returned a verdict in favor of J.G. In August of that year, North Brook filed a renewed motion for judgment as a matter of law, which is still pending before the District Court.

molestation endorsement, Northfield owes no coverage for bodily injury, property damage, or personal and advertising injury "arising out of any act of 'abuse or molestation' committed by any person, including any act or omission in connection with the prevention or suppression of such 'abuse or molestation.'" Under the assault or battery endorsement, Northfield's coverage duties for assault or battery offenses are limited to $25,000 for each individual offense and $50,000 for the aggregate of all offenses. This endorsement also excludes coverage for various injuries, including injuries "arising out of an 'assault or battery offense' committed at the direction of the insured or that the insured knowingly allowed to happen."

In August 2023, Northfield brought this action seeking a declaration pursuant to 28 U.S.C. § 2201[2] that, under the policy, it "does not owe coverage" to North Brook for J.G.'s claims in the underlying lawsuit. It sought a declaration on three counts: (1) that J.G.'s claims did not constitute personal and advertising injury, so they were not covered by the policy's Coverage B; (2) that J.G.'s claims were subject to the abuse or molestation endorsement, so coverage under Coverages A and B was barred; and (3) that J.G.'s claims were subject to the assault or battery endorsement, so coverage under Coverages A and B was barred or limited. Because

---

[2] "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

Coverages A and B obligated Northfield to defend certain lawsuits against North Brook and pay certain damages for which North Brook was found liable, Northfield's declaratory judgment action implicated its duty to defend and its duty to indemnify. *See James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1252 n.5 (11th Cir. 2022) ("The duty to defend [is the duty] to pay the insured's litigation costs in the underlying action[, and] the duty to indemnify [is the duty] to cover the damages ultimately awarded against the insured.").

North Brook filed a motion to dismiss Northfield's complaint under Rules 12(b)(1) and 12(b)(6). It argued that Northfield's duty to indemnify turns on whether North Brook is ultimately held liable in the underlying action. As such, Northfield's claims as they related to its duty to indemnify were not ripe. North Brook further argued that J.G.'s claims in the underlying action contained allegations subject to coverage under Coverage B and concerned conduct that fell outside both endorsements. Consequently, Northfield owed a duty to defend, and its action must be dismissed for failure to state a claim to the extent it sought a declaration to the contrary.

The Court viewed Northfield's complaint through two lenses—one for the duty to defend and the other for the duty to indemnify—and it partially granted the Rule 12(b)(6) motion.[3] The Court analyzed the various policy provisions and the allegations in J.G.'s complaint against North Brook. It found that J.G.'s

---

[3] The Court erroneously stated that North Brook did not file a motion pursuant to Rule 12(b)(1).

allegations fell within the scope of Coverages A and B and that the endorsements did not unambiguously "bar or limit" coverage. It, therefore, concluded that "Northfield has a duty to defend Northbrook [sic] in the [u]nderlying [a]ction." However, the Court also stated that, though North Brook could ultimately be found liable in the underlying action, it had not been yet. As such, Northfield's suit for a declaration on its duty to indemnify was not ripe but could ripen in the future. The Court granted in part North Brook's motion to dismiss Northfield's complaint for a declaratory judgment: it entered an order dismissing the action as related to Northfield's duty to defend and retaining jurisdiction of the action as related to Northfield's duty to indemnify.

Northfield appeals the District Court's order to the extent the order dismissed its request for a declaration that it owed no duty to defend,[4] asserting that the order constitutes an injunction and is, thus, immediately appealable under 28 U.S.C. § 1292(a)(1).[5]

---

[4] Northfield also argued that the District Court implicated the duty to indemnify, and erred, by stating that the policy's endorsements did not "limit" coverage for J.G.'s claims. We do not reach this argument.

[5] 28 U.S.C. § 1292(a)(1) provides that appellate courts have "jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

## II. Discussion

Though North Brook did not contest our jurisdiction to entertain this appeal, we had our own concerns. Because "we are obligated to address jurisdictional questions *sua sponte*," we instructed the parties to address in detail whether we can hear this appeal. *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 818 (11th Cir. 2010) (internal quotation marks omitted). We cannot.

"The courts of appeals . . . have jurisdiction of appeals from all final decisions of the district courts of the United States," 28 U.S.C. § 1291—those that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S. Ct. 1712, 1718 (1996) (internal quotation marks omitted).

We also have jurisdiction over appeals of certain nonfinal orders, including those orders that grant injunctions. 28 U.S.C. § 1292(a)(1). This jurisdiction extends not only to those orders that explicitly grant injunctions but also to those orders that have "the practical effect of granting . . . injunction[s]." *Abbott v. Perez*, 585 U.S. 579, 594, 138 S. Ct. 2305, 2319 (2018) (internal quotation marks omitted). To have the injunctive effect necessary for appeal, the order (1) "must be a clear and understandable directive from the district court," (2) "must be enforceable through contempt proceedings," and (3) "must give some or all of the substantive relief sought." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1358 (11th Cir. 2008); *see also Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128–29 (11th Cir. 2005); *Schultz v. Alabama*, 42 F.4th 1298, 1316

(11th Cir. 2022); *Georgia v. Heinze*, 171 F.4th 1335, 1341 (11th Cir. 2026).

Our decision in *Ultratec* is instructive. In *Ultratec*, an insurer filed a declaratory judgment action, asking the District Court to declare that it did not owe the insureds a duty to defend or duty to indemnify in an underlying lawsuit. 22 F.4th at 1250. The insureds filed a counterclaim for a declaratory judgment that the insurer did owe a duty to defend and moved for summary judgment on that issue. The Court granted the insureds' motion. *Id.* at 1250–51. On appeal, we explained that though the District Court's order did not *explicitly* require the insurer to pay defense costs, it still *effectively* required the payment because it granted summary judgment on the insureds' counterclaim. *Id.* at 1252–53. Further, the insureds had "sought a declaratory judgment and other appropriate relief, which includes injunctive relief." *Id.* at 1253. And, though the Court did not expressly retain jurisdiction to enforce the judgment under its contempt power, the parties agreed that if the insurer did not pay the insureds' defense costs, it would be subject to contempt proceedings.[6] *Id.* at 1253 n.7. Ultimately, the Court's order was "akin to an injunction." *Id.* at 1253.

---

[6] In explaining this, we did state that the three elements necessary to have the practical effect of an injunction were "examples of characteristics that indicate injunctive qualities rather than absolute requirements." *Ultratec*, 22 F.4th at 1253 n.7 (emphasis omitted). This statement was incorrect; our precedent at the time *Ultratec* was decided clearly did absolutely require all three elements for an injunction. *See Sierra Club*, 526 F.3d at 1358; *U.S. Army Corps of Eng'rs*, 424 F.3d at 1128–29. Regardless, the statement itself was dicta. Though the

The order here is different. Where the district court in *Ultratec* granted summary judgment to the insureds on their counterclaim for a declaratory judgment, the Court here only, partially, granted a 12(b)(6) motion to dismiss. It did not grant North Brook affirmative relief. In ruling on the motion to dismiss, the Court did conclude that "Northfield has a duty to defend Northbrook [sic] in the [u]nderlying [a]ction." But that was simply its reason for finding that Northfield's complaint for a declaration to the contrary failed to state a claim. The District Court's order was not an in personam order requiring Northfield's performance, was not enforceable by the Court's contempt power, and did not award the insured substantive relief. The order "merely announce[d] the meaning of . . . contested policy provision[s] and d[id] nothing else." *Zenith Ins. Co. v. Newell*, 78 F.4th 603, 608 (3d Cir. 2023). It meets none of the requirements for having the practical effect of an injunction. It, therefore, is not subject to immediate appeal.[7]

---

order in question was not "expressly enforceable by contempt," we explained that if the insurer did not comply with the order, it "likely would be subject to contempt proceedings" and that the parties had acknowledged as much at oral argument. *Ultratec*, 22 F.4th at 1253 n.7. In other words, though we stated that the three elements were not each required, we found that the element at issue was met even though it was not expressly provided for. *Id.*

[7] Northfield also argues that the order in this case is appealable under § 1291 because it is a final order. We disagree. There is more for the District Court to do to reach a final judgment; the Court expressly left the duty to indemnify issue for future consideration. *See Quackenbush*, 517 U.S. at 712, 116 S. Ct. at 1718; *see also Ultratec*, 22 F.4th at 1251 ("The order before us on appeal is nonfinal and interlocutory because [the insurer's] request for a declaratory judgment on the duty to indemnify remains pending before the district court.");

24-13333                 Opinion of the Court                 9

We pause to note that Northfield is not without options. It could move the District Court to enter final judgment on its duty to defend under Rule 54(b), arguing that there is no just reason for delay. *See* FED. R. CIV. P. 54(b) ("When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . if the court expressly determines that there is no just reason for delay."). Or it could move for leave to amend its complaint for a declaratory judgment under Rule 15(a)(2), to remove the still-pending request for a declaration on its duty to indemnify, and then ask for final judgment. *See* FED. R. CIV. P. 15(a)(2) ("In all . . . cases [that do not fall under Rule 15(a)(1)], a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."). Northfield could then appeal the ruling on its duty to defend, and we would have proper jurisdiction to entertain the merits of Northfield's arguments. As it stands, we do not.

### III. CONCLUSION

Congress gave the courts of appeals the ability to review final judgments and certain interlocutory orders, such as those that grant injunctions. 28 U.S.C. §§ 1291, 1292. The Supreme Court has

---

*Positano Place at Naples I Condo. Ass'n v. Empire Indem. Ins. Co.*, 84 F.4th 1241, 1248 (11th Cir. 2023) ("When a district court anticipates that further proceedings on substantive matters may be required, any order it makes to facilitate those further proceedings is necessarily not final." (internal quotation marks omitted)). The order is not final.

interpreted that jurisdiction to include orders that have the practical effect of granting injunctions, because Congress's scheme allowing interlocutory review "could be frustrated" if such review "depended on the district court's use of the term 'injunction' or some other particular language." *Abbott*, 585 U.S. at 595, 138 S. Ct. at 2319–20. That flexibility, though, is not boundless. The line exists somewhere, and this case crosses it. We dismiss this appeal for lack of jurisdiction.

**DISMISSED.**

24-13333                TJOFLAT, J., Concurring                1

TJOFLAT, Circuit Judge, concurring:

I write separately to explain two issues in this case. First, this case reflects a fundamental misunderstanding of the declaratory judgment action. Second, allowing an insurer to sue for a declaration that it owes no duty to defend in an underlying action while simultaneously defending that underlying action creates problems that cannot stand.

## I.

A declaratory judgment action is different from a normal lawsuit. It is meant to declare the rights of litigants, not award relief for injury.[1] 28 U.S.C. § 2201. The logical corollary here is that the declaratory judgment action is not warranted where the rights of the litigants are not in dispute. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771 (2007) ("'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941))); *Dixie Elec. Co-op. v. Citizens of State of Ala.*, 789 F.2d 852, 858 (11th Cir. 1986) ("The case must consist of a 'real and substantial controversy admitting of specific relief through a decree of

---

[1] The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" (quoting *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241, 57 S. Ct. 461, 464 (1937))).

If there is no dispute, any decision on the matter is an impermissible advisory opinion. *See Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959 (1969). As such, a proper complaint for declaratory judgment must allege that a present disagreement exists that requires immediate resolution. If the complaint does not make that allegation, it is asking the court to declare what the parties seemingly already know. A proper motion to dismiss for failure to state a claim would argue that the complaint does not allege the requisite disagreement, meaning it does not state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6).

Here, Northfield did not allege in its complaint that there was any disagreement as to the meaning of the policy that required immediate resolution.[2] It did not even allege that North Brook sought payment under the policy. It simply stated what its interpretation of the policy was and asked the District Court to agree with it. North Brook, in its motion to dismiss, did the same. It did not explain that Northfield failed to allege a disagreement between them. It simply explained how it interpreted the policy in question.

---

[2] Indeed, the underlying action had been pending for roughly two and a half years, and Northfield had been providing a defense for that entire time.

24-13333                 TJOFLAT, J., Concurring                 3

The parties ignored the very purpose of the declaratory judgment action and essentially did not pursue one.

## II.

Northfield is defending North Brook in the underlying action pursuant to a reservation of rights while simultaneously seeking a declaration that it owes no duty to defend. If the District Court gave Northfield what it was looking for, chaos would have ensued.

The moment the District Court declared that Northfield owed North Brook no duty to defend, Northfield, in theory, would have been free to stop defending. North Brook, which had been relying on Northfield's defense, would have been left scrambling to determine its next steps, and the Court would have had to declare a continuance while North Brook sorted it out. North Brook would have had to either find new attorneys to take up its defense in the middle of the case or begin paying the existing attorneys—whom North Brook likely had no hand in selecting in the first place—with no warning ahead of time. Delays in the underlying action would have been unavoidable and, if the declaration came during the underlying action's trial, a mistrial would have been all but certain. Our system, built on fairness, notice, and justice, should not allow for such catastrophic effects.